**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
[0:24-cv-62444] | CIVIL | JUDGE

PAUL ADAMS,

       Plaintiff/Petitioner,

v.

CHRIS HENIEN,

       Defendant/Respondent.

**COMPLAINT FOR RECOGNITION AND ENFORCEMENT OF A FOREIGN-COUNTRY MONEY JUDGMENT AND AN INTERNATIONAL ARBITRATION AWARD**

Plaintiff/Petitioner Paul Adams ("Adams" or "Petitioner") petitions for an order (1) recognizing and enforcing an out-of-country foreign money-judgment against Defendant/Respondent Chris Henien ("Henien" or "Respondent"), pursuant to Florida's Uniform Out-of-Country Foreign Money-Judgment Recognition Act ("Florida's Recognition Act," Fla. Stat. §§ 55.601 *et seq.*); and (2) confirming and enforcing a final arbitration award issued against Respondent, pursuant to 9 U.S.C. § 207 and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). In support of this Complaint, Petitioner alleges as follows:

**INTRODUCTION**

1.     Adams and Henien were parties to a Settlement Agreement, dated February 2014, which resolved a dispute regarding the scope and activities of Adams as the sole director of certain companies for which Henien was a shareholder. The Settlement Agreement provided that

1

Henien, along with certain other non-parties, were jointly and severally responsible for making certain settlement payments to Adams by specific deadlines.

2.      After Henien failed to make the payments by the required deadlines, Adams filed a lawsuit on September 29, 2022 in the District Court of the Canton of St. Gallen, Switzerland (the "Swiss Trial Court"), Business No. (i.e., case number) SS.2022.971-MTO/SG2ZE-LSC, to collect the sums owed to him by Henien. The Swiss Trial Court issued a money judgment on January 18, 2023 in favor of Adams and against Henien in the amount of CHF[1] 75,987.00, plus 5% interest since July 5, 2014 (the "Money Judgment").[2] Henien subsequently appealed the Money Judgment, but his appeal was dismissed and the Swiss Trial Court was affirmed.

3.      After losing on appeal, Henien filed a notice of arbitration against Adams on April 20, 2023 with the Swiss Arbitration Centre, Case No. 600705-2023, seeking a declaration that the Settlement Agreement was invalid, that Henien was not jointly and severally liable with his co-debtors, and that Henien had a claim which he could set-off against the amounts he owed Adams. The Arbitrator issued a Final Award on December 29, 2023, finding in favor of Adams, and also awarding Adams costs of CHF 46,105.08.

4.      The Final Award reiterated the Swiss Trial Court's judgment in favor of Adams and awarded certain arbitration and party costs to Adams. Thus, this Complaint seeks recognition, domestication, and enforcement of both the Money Judgment (for the debt resulting from Henien's failure to timely pay the required settlement payments, and additional 5% interest) and the Final Award (for Adams' costs incurred in the arbitration), along with an award of post-

---

[1] "CHF" is the abbreviation for the Swiss franc, the currency and legal tender of Switzerland.
[2] Together with an affidavit required under Florida's Recognition Act, the Money Judgment is being concurrently recorded with the Broward County Records, Taxes and Treasury Division.

award pre-judgment interest for the Final Award, and post-judgment interest for both the Money Judgment and the Final Award.

5.     Pursuant to the Money Judgment and the Final Award, Henien owed Adams a total of CHF 122,092.08 (roughly equivalent to $144,830.46), not including interest. While Henien has made some minimal payments to the Swiss Debt Enforcement Office, he has also claimed some of those payments back, and the balance (and subsequent interest) has not been paid off in full.

6.     Adams believes that Henien has employed several tactics, including relocating to various countries, to avoid payment.

## PARTIES

7.     Adams is an individual, who is a citizen of the United Kingdom.

8.     Henien is an individual, who is a citizen of the United Kingdom and a resident of Broward County, Florida.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Petitioner's request to confirm an international arbitration award arises under the laws and treaties of the United States, i.e., 9 U.S.C. §§ 201-208 and the New York Convention.

10.     This Court has subject matter jurisdiction under 9 U.S.C. § 203 because Petitioner's request to confirm an international arbitration award arises out of a commercial relationship between entities that are not entirely domestic, and the arbitration award was issued in Switzerland, a signatory to the New York Convention. *See Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 446 (D.D.C. 2018) ("[T]he Court finds that the New York Convention and the FAA apply because there is a written agreement; the written agreement provides for

arbitration in Switzerland, a signatory to the New York Convention; the disagreement arises out of a commercial relationship; and the dispute is not entirely domestic."); *see also Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 103-104 (D.C. Cir. 2015) ("In the context of international arbitration, 'commercial' refers to 'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.").

11.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) because Petitioner's request to recognize an out-of-country foreign money-judgment is so related to Petitioner's request to confirm an international arbitration award that the requests form part of the same case or controversy.

12.     This Court has general personal jurisdiction over Respondent because (1) he is a resident of and maintains a residence in Florida; (2) Respondent's contacts with Florida are so substantial and not isolated as to subject him to general jurisdiction under Fla. Stat. § 48.193(2) (i.e., Florida's long-arm statute); (3) Respondent's contacts with Florida are so "continuous and systematic" as to render him essentially at home in Florida; and (4) exercising personal jurisdiction over Respondent in Florida "does not offend traditional notions of fair play and substantial justice." *See Sequip Participacoes S.A. v. Marinho*, 2018 U.S. Dist. LEXIS 235838, at *14-15 (S.D. Fla. Oct. 16, 2018).

13.     Venue is proper in this district pursuant 9 U.S.C. § 204 which provides that an action or proceeding under 9 U.S.C. § 203 may be brought in any court in which, save for the arbitration agreement, an action or proceeding with respect to the controversy between the parties could be brought. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) as Respondent is a resident of, and maintains a residence and owns property in, Broward County, Florida, which is located within this district and division.

## FACTS

### The Initial Dispute and Settlement Agreement

14.     In February 2014, Adams and Henien (together, the "Parties"); along with non-parties Youssry Henien and Harry Henien (together with Henien, the "Clients," who were the shareholders of the Companies), Adams Associates (together with Adams, the "Directors," who were the directors of the Companies), and La Cloche Wealth Management SA and Leman Wealth Management SA (together, the "Companies"), entered into a settlement agreement (the "Settlement Agreement") to resolve a dispute regarding the scope and activities of Adams as the sole director with respect to the Companies. More specifically, the dispute revolved around the management and governance of the Companies, the resignation of the Directors from the Companies, and the compensation of the Directors. A true and accurate copy of the Settlement Agreement is attached hereto and incorporated as **Exhibit A**.

15.     Pursuant to the terms of the Settlement Agreement, Henien (along with the other Clients), agreed to pay Adams (along with Adams Associates) the amount of CHF 120,000 pursuant to certain deadlines. *See* Ex. A, ¶ 1.2. The first CHF 20,000 payment was due no later than February 20, 2014. *Id.*, ¶ 1.2(i). The second CHF 20,000 payment was due by the end of February 2014. *Id*. The remaining balance of CHF 80,000 was due in four successive installments of CHF 20,000 each by the end of March 2014, April 2014, May 2014, and June 2014, respectively. *Id.*, ¶ 1.2(ii).

16.     A penalty of CHF 20,000 would be added on top of the settlement amounts should the Henien and the Clients fail to comply with one of the deadlines for more than 5 (five) working days after due notice to Adams and the Directors by email, with one penalty per missed deadline. *Id.*, ¶ 1.4.

17.    The Companies served as guarantors of Henien's and the Clients' payment obligations, and Adams and the Directors were authorized to seek performance thereof directly with the Companies. *Id*., ¶ 1.5.

18.    Pursuant to its terms, the Settlement Agreement was governed by Swiss law. *Id*., ¶ 6.1. Furthermore, "any dispute arising out of, or in relation to," the Settlement Agreement was to be resolved by arbitration in accordance with the Expedited Procedure of the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution, with the arbitration to take place in Geneva, Switzerland, and the proceedings to be conducted in English. *Id*., ¶¶ 6.2-6.3.

**Henien and the Clients' Failure to Pay**

19.    After failing to make any of the six required settlement payments on time, Henien and the Clients' obligation doubled to CHF 240,000 (i.e., the settlement amount of CHF 120,000, plus another CHF 120,000 in penalties).

20.    After deducting late payments by Henien and the Clients of CHF 88,026.00, an outstanding amount of CHF 151,974.00 remained unpaid.

**The Proceedings in the Swiss Debt Enforcement Office**

21.    Before moving forward with the facts, it is worth briefly summarizing the procedures of Swiss debt enforcement law. In the Swiss legal system, if a creditor seeks enforcement of a claim and the debtor objects, the creditor must prove the validity of the claim in the District Court to remove the objection. If the creditor obtains *provisional* enforcement from the District Court, then the debtor can respond by filing an action to deny the underlying claim. Such an action may be filed by the debtor in Court, or in arbitration. This second action essentially shifts the dispute from a procedural enforcement matter to a substantive review of the

claim itself. A ruling or final award in the second action by the arbitrator in favor of the creditor removes the debtor's objection and allows the creditor to proceed with the enforcement process.

22.     Adams initiated proceedings against Henien in the Debt Enforcement Office of the Canton of St. Gallen, Switzerland (the "Swiss Debt Enforcement Office"), Debt Enforcement No. 22000410.

23.     On or about January 12, 2022, the Swiss Debt Enforcement Office issued a payment order. A true and accurate copy of the certified English translation of the Payment Order is attached hereto and incorporated as **Exhibit B-2**.

24.     The Payment Order was for CHF 151,974.00[3] plus interest at 5% since July 2014 (i.e., when the last payment was received), along with costs of the payment order of CHF 203.30, and court costs and party compensation.

25.     On or about January 12, 2022, Henien objected to the Payment Order.

**The Proceedings in the Swiss Trial Court**

26.     On or about September 29, 2022, Adams filed a petition with the Swiss Trial Court, seeking to remove Henien's objection and to enforce the Payment Order.

27.     Henien responded, arguing that the petition should be rejected because (1) there was no "solidarity" (i.e., joint and several liability) between Henien and his co-debtors Youssry Henien and Harry Henien, and therefore Henien was not responsible for the entire sum; and (2) there was no "solidarity" between Adams and his co-creditor Adams Associates, and therefore Adams was not entitled to demand payment of the entire claim to himself.

---

[3] Note that Exhibit B appears to contain a typographical error as it states that the amount of the Payment Order is CHF 151,874. However, the Money Judgment and the Final Award both reference the correct amount of CHF 151,974.

28.     On or about January 18, 2023, the Swiss Trial Court issued an enforceable Money Judgment. A true and accurate copy of the certified English translation of the Money Judgment is attached hereto and incorporated as **Exhibit C-2**.

29.     The Swiss Trial Court found that Henien was jointly and severally liable with his co-debtors Youssry Henien and Harry Henien. *See* Ex. C., at p. 5.

30.     However, the Swiss Trial Court also found that Adams did not explain to which solidarity existed on the creditor's side, and thus partial creditor status must be assumed. *Id*., at p. 5-6.

31.     The Swiss Trial Court thus awarded Adams CHF 75,987.00 (rather than the CHF 151,974.00 he requested), plus 5% interest since July 5, 2014. *Id.*, at p. 10.

32.     Although the Swiss Trial Court rejected Adams' request for the costs of the payment order and the party costs (*see id*., at p. 8), it ordered Henien to reimburse Adams for court costs in the amount of CHF 150.00. *Id.*, at p. 10.

**The Proceedings in the Swiss Appellate Court**

33.     On or about February 9, 2023, Henien appealed the Money Judgment to the Cantonal Court of the Canton of St. Gallen, Switzerland (the "Swiss Appellate Court"), Business No. BES.2023.8-EZS1, and enforcement of the Swiss Trial Court's decision was postponed.

34.     Henien requested that the Swiss Appellate Court set aside the Money Judgment, and that the award be reduced to CHF 25,299.00 plus 5% interest since July 5, 2014.

35.     Henien reasserted his argument that there was no joint and several liability between himself and his co-debtors.

36.     On or about March 28, 2023, the Swiss Appellate Court issued an enforceable decision (the "Appellate Decision"). A true and accurate copy of the certified English translation of the Appellate Decision is attached hereto and incorporated as **Exhibit D-2**.

37.     In its decision, the Swiss Appellate Court rejected Henien's argument, holding that "solidarity" can arise from the circumstances and does not have to be proven by documents. *See* Ex. D, at p. 3-4.

38.     The Swiss Appellate Court thus dismissed the appeal, affirming the Money Judgment. *Id.*, at p. 4. The Swiss Appellate Court held that the consequences of costs and compensation as determined by the Swiss Trial Court would remain unchanged. However, the Swiss Appellate Court also determined that Henien was obligated to compensate Adams for his party costs in the appellate proceedings in the amount of CHF 1,500.00, which Henien paid to Adams. *Id*, at p. 4-5.

39.     Although Henien had the opportunity to appeal the Appellate Decision to the Swiss Federal Supreme Court (*see id.*, at p. 5-6), he did not do so.

**The Arbitration Proceedings**

40.     On or about April 20, 2023, following the Appellate Decision, Henien filed a Notice of Arbitration with the Swiss Arbitration Centre, Case No. 600705-2023.

41.     Henien and Adams were the only parties to the arbitration.

42.     Henien sought a declaration from the Arbitrator that he was not a debtor of Adams and that the debt enforcement proceedings should be terminated.

43.     On or about December 29, 2023, the Arbitrator issued a Final Award. A true and accurate copy of the Final Award is attached hereto and incorporated as **Exhibit E**.

44.     The Arbitrator determined that (1) the Settlement Agreement was valid (*see* Ex. E, § 5.3.4); (2) Henien was jointly and severally liable with his co-debtors Youssry Henien and Harry Henien under the Settlement Agreement (*see id.*, § 5.4.4); and (3) that Henien did not have any claims against Adams that he could set-off against Adams' claim for CHF 75,987.00 (*see id.*, § 5.5.4).

45.     The Arbitrator reiterated the Swiss Trial Court's decision that Henien owed Adams a total of CHF 75,987.00 under the Settlement Agreement.[4]

46.     The Arbitrator further determined that Henien was responsible for paying 100% of the arbitration costs and the party costs. *See id.*, §§ 6.2.1 and 6.2.2. Thus, the Arbitrator ordered Henien to pay Adams CHF 6,000 as arbitration costs and CHF 40,105.08 as party costs.

**Amount Owed by Henien to Adams**

47.     Pursuant to the Money Judgment, as affirmed by the Swiss Appellate Court and reiterated by the Final Award, Henien owed Adams a total of CHF 75,987.00 under the Settlement Agreement. Henien also owes Adams 5% interest on this amount, starting from July 5, 2014.

48.     Pursuant to the Arbitrator's Final Award, Henien also owed Adams a total of CHF 46,105.08 (i.e., CHF 6,000 as arbitration costs and CHF 40,105.08 as party costs). Adams intends to seek post-award, prejudgment interest on this amount, starting from December 29, 2023 (i.e., the date the Final Award was issued) to the date this Court enters a final judgment. Adams also intends to seek post-judgment interest on this amount.

---

[4]  The Arbitrator did not explicitly reference the Swiss Trial Court's decision that Henien owed Adams 5% interest on that amount, starting from July 5, 2014. However, pursuant to Swiss law, the Arbitrator was not required to explicitly state that interest was included as the sole purpose of the Arbitration was to review the judgment of the District Court.

49.     Thus, prior to calculating interest, Henien owed Adams a total of CHF 122,092.08. This amount is roughly equivalent to $144,830.46.[5]

50.     While Henien has made some minimal payments to the Swiss Debt Enforcement Office, he has also claimed some of those payments back, and the balance (and subsequent interest) has not been paid off in full.

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE MONEY JUDGMENT UNDER FLA. STAT § 55.601 *et seq.*

51.     Adams incorporates by reference the allegations and arguments in the foregoing paragraphs.

52.     Florida's Recognition Act applies to any out-of-country foreign judgment that is final and conclusive and enforceable where rendered, to the extent that it grants or denies recovery of a sum of money. *See* Fla. Stat. §§ 55.603-55.604.

53.     The Judgment of the Swiss Trial Court is final, conclusive, and enforceable in Switzerland.

54.     The Judgment of the Swiss Trial Court granted recovery of a sum of money to Adams in the amount of CHF 75,987.00, plus 5% interest starting from July 5, 2014.

55.     Courts in the United States regularly recognize and enforce judgments from Switzerland. *See Allianz Suisse Versicherungs-Gesellschaft v. Miller*, 24 F. Supp. 3d 670, 676 (W.D. Mich. 2014) (quoting *Medoil Corp. v. Citicorp.*, 729 F. Supp. 1456, 1460 (S.D.N.Y. 1990)) ("Swiss courts are a fair and reasonable forum for resolution of disputes.") The fundamental principles underlying Florida's Recognition Act support the recognition and enforcement of the Judgment of Swiss Trial Court before this Court.

---

[5] This was calculated using the U.S. Treasury Department's Currency Exchange Rates Converter with the most recent foreign current rates published on September 30, 2024. https://fiscaldata.treasury.gov/currency-exchange-rates-converter/.

56.     Henien submitted to the jurisdiction of the Swiss Trial Court and the Swiss Appellate Court, appearing for and submitting arguments.

57.     The Swiss Trial Court had subject matter jurisdiction over the proceedings to enforce the Payment Order.

58.     The Money Judgment is compatible with the requirements of due process of law. Henien had notice and an opportunity to be heard throughout the proceedings, and in fact participated and was heard during the proceedings. Moreover, the Swiss Trial Court was an impartial tribunal.

59.     Switzerland was not an inconvenient forum, and Henien submitted to the jurisdiction of the Swiss Trial Court and the Swiss Appellate Court.

60.     None of the defenses in Fla. Stat. 55.605 apply here.

61.     Adams is therefore entitled to recognition and enforcement of the Money Judgment and respectfully requests that the Court enter judgment accordingly, along with an award of post-judgment interest and such other relief as this Court deems just and proper.

## COUNT II – CONFIRMATION AND ENFORCEMENT OF THE FINAL AWARD UNDER 9 U.S.C. § 207

62.     Adams incorporates by reference the allegations and arguments in the foregoing paragraphs.

63.     The New York Convention applies to the recognition and enforcement of arbitral awards that (1) arise out of a legal relationship, whether contractual or not, which is considered as commercial; and (2) are made in a country other than the country where the recognition and enforcement of such awards are sought. *See* 9 U.S.C. § 202 and New York Convention, Article I.

64.     Within three years after an arbitral award falling under the New York Convention is made, any party to the arbitration may apply for an order confirming the award as against any

other party to the arbitration, and the court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award as specified in the New York Convention. *See* 9 U.S.C. § 207.

65.     To obtain recognition and enforcement, the party applying for recognition and enforcement shall, at the time of application, supply (a) the duly authenticated original award or a duly certified copy thereof; and (b) the original agreement by the parties undertook to submit to arbitration, or a duly certified copy thereof. *See* New York Convention, Article IV.

66.     The Final Award arises out of a commercial legal relationship between the Parties.

67.     Both Parties are non-U.S. citizens.

68.     The Final Award is a binding adjudication of all liability and damages issues in the arbitration.

69.     A duly certified copy of the Final Award and the Settlement Agreement are attached hereto.

70.     None of the defenses in Article V of the New York Convention apply here.

71.     Adams is therefore entitled to recognition and enforcement of the Final Award and respectfully requests that the Court enter judgment accordingly, along with an award of post-award prejudgment interest, post-judgment interest and such other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

72.     WHEREFORE, Adams requests, that this Court enter a judgment:

a.      Confirming and Enforcing the Money Judgment, including (1) awarding
        Adams the amount of CHF 75,987.00 as debt under the Settlement

Agreement as awarded in the Money Judgment, less any amounts already paid by Henien; and (2) awarding Adams interest of 5% on CHF 75,987.00, from July 5, 2014 to the date this Court enters a judgment confirming the Money Judgment;

b.    Confirming and Enforcing the Final Award, including (1) awarding Adams the amount of CHF 46,105.08 as costs as awarded in the Final Award, less any amounts already paid by Henien; and (2) awarding post-award, prejudgment interest of 8.54% (pursuant to Fla. Stat. § 55.03 and as set by the Florida Chief Financial Officer) on CHF 46,105.08 from December 29, 2023 to the date this Court enters a judgment confirming the Final Award;

c.    Converting the above amounts from Swiss Francs into U.S. Dollars;

d.    Awarding post-judgment interest in U.S. Dollars on the above amounts starting from the date this Court enters a judgment confirming both the Money Judgment and the Final Award to the date this Court's judgment is paid in full, pursuant to 28 U.S.C. § 1961;

e.    Retaining jurisdiction to enforce satisfaction of this Court's judgment as may be necessary; and

f.    Awarding Adams with such other relief as this Court deems just and proper, including costs.

Dated: December 30, 2024

Respectfully Submitted,

*/s/ Emanuel L. McMiller*
Traci T. McKee (FL #53088)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel:  (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com

Emanuel L. McMiller (FL #1025242)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Tel:  (317) 237-0300
Fax: (317) 237-1000
manny.mcmiller@faegredrinker.com

*Attorneys for Plaintiff/Petitioner Paul Adams*